UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMILEE BOWYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02718-TWP-MPB |
| | ) |
| LAURIE JOHNSON, | ) |
| KELLY NEECE, | ) |
| ISAAC RANDOLPH, | ) |
| | ) |
| Defendants. | ) |

**ENTRY SCREENING AND DISMISSING COMPLAINT
AND PROVIDING PLAINTIFF AN OPPORTUNITY TO SHOW CAUSE OR AMEND**

Plaintiff Emilee Bowyer is an inmate at the Indiana Women's Prison ("IWP"). Ms. Bowyer filed her complaint on October 16, 2020. *See* dkt. 1. Because Ms. Bowyer is a "prisoner" as defined by 28 U.S.C. § 1915(A)(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen her complaint.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to "a less stringent standard than pleadings drafted by lawyers." *Cesal*, 851 F.3d at 720.

## II. The Complaint

Ms. Bowyer names the following Indiana Department of Correction ("IDOC") employees as defendants in her complaint: (1) IWP Warden Laurie Johnson; (2) IWP Major Kelly Neece; and (3) Offender Grievance Manager, Isaac Randolph. Dkt. 1. Ms. Bowyer alleges that since March 2020 IWP has been on lockdown due to COVID-19. *Id.* at 2. This lockdown, "implemented by Warden Laurie Johnson [and] Major Kelly Neece" has included that inmates be confined to their cells "24 hours per day, 7 days a week." *Id.* Ms. Bowyer alleges that while confined to their cells, inmates do not have access to running water or a toilet and must rely on staff to unlock the door each time to allow them bathroom breaks. *Id.* Due to "low-staffing," Ms. Bowyer states that these breaks can take several hours which has caused "many offenders" to urinate or defecate on themselves or in bowls or trash bags in their cells. *Id.* She also contends that inmates do not have regular access to showers, laundry facilities, phones, recreation movements, or religious services. *Id.*

Ms. Bowyer alleges that on May 28, 2020, an updated dayroom schedule was put in place that allowed inmates access during two different time periods each day. *Id.* This schedule continued for five months but beginning again on October 9, 2020, full lockdown was again initiated. *Id.* Ms. Bowyer references two grievances she filed in July 2020 regarding the dayroom schedule because she was "continually missing" accessibility to the dayroom due to her job at the facility. *Id.* at 3. Missing these intervals prevented her from using the phone, the microwave,

watching the news, or participating in other dayroom activities. *Id.* Ms. Bowyer's grievances were denied by Major Neece and Warden Johnson, and Isaac Randolph denied her appeal. *Id.*

Ms. Bowyer contends that the restrictions at IWP "are above and beyond what any other IDOC facility is experiencing" and that as a medium to low risk offender she is "being unjustly subjected to the restrictions that are meant to be imposed on high-risk offenders." *Id.* at 3-4. Ms. Bowyer alleges that "[u]nlike male inmates, female inmates are denied the opportunity to be housed in an institution that reflects [their] degree of security risk." *Id.* at 3. She asserts that the limited movement from lockdown and the new scheduling causes "severe psychological, spiritual, physical, and emotional stress on [the inmates'] minds and bodies." *Id.* at 4.

Ms. Bowyer seeks injunctive relief in the form of the dayroom hours being restored to what was in effect prior to COVID-19, that female offenders be housed under the same rules as men according to security status, and that doors remain unlocked to allow inmates independent access to the restroom. *Id.* at 5.

### III. Discussion of Claims

The Court construes Ms. Bowyer's claims as those that pertain to the conditions of her confinement. Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that the "conditions of [her] confinement resulted in the denial of the minimal civilized measure of life's necessities, and that the defendants were deliberately indifferent to the conditions in which [she] was held." *Gruenber v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012) (internal quotations omitted).

The overarching problem with the plaintiff's complaint is that she does not allege that she has suffered any compensable injury as a result of the restrictions implemented by the facility in response to the pandemic. Section 1983 allows for recovery only by a "party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . cause any injury.") (internal quotation omitted).

Ms. Bowyer generally states that inmates had to rely on staff to allow them access to the restroom, and this caused "many offenders" to have accidents in their cells. "Adequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities, that must be afforded prisoners." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (internal quotation omitted). However, Ms. Bowyer does not allege that she was personally denied any request to use the restroom or that she was forced to eliminate bodily waste inside her cell. Similarly, Ms. Bowyer says that inmates did not have "regular access" to showers or laundry facilities but does not allege that she was ever denied any requests to shower or do laundry for prolonged periods of time. The Court notes that the updated dayroom schedule Ms. Bowyer attached at docket 1-1 references that the IWP had a dayroom schedule which allowed the opportunity for restroom breaks that was "in addition to the shower, laundry, and restroom break schedule."

Ms. Bowyer states generally that inmates did not receive "recreation movements" or religious services. While the Seventh Circuit has "recognized that lack of exercise can rise to a constitutional violation" when an inmate's movement is restricted to the point where her health is threatened, it has also made clear that not all restrictions on exercise violate the Constitution. *Smith*

*v. Dart*, 803 F.3d 304, 309-10 (7th Cir. 2015). Ms. Bowyer's complaint does not contain factual allegations that tell how and to what extent her movement had been restricted. For example, according to her complaint, Ms. Bowyer was not restricted from working in the commissary, being able to eat in the chow hall, or being able to observe the dayroom schedule intervals when they did not conflict with her work schedule. Likewise, Ms. Bowyer has not pled factual allegations to show how and to what extent she was deprived of religious services.

Rather, the crux of Ms. Bowyer's complaint with factual allegations specific and individual to her involve the subject matter of her offender grievances regarding the dayroom hours. Dkt. 1-1. Because Ms. Bowyer worked in the commissary on certain days and those work hours overlapped with the intervals that the dayroom was accessible, she was unable to utilize the dayroom on those days. Ms. Bowyer states that this "happens quite frequently" and during those times she could not use the phone, microwave, or television. *Id.* As it pertains to the Eighth Amendment, "[l]ife's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Morris v. Ley*, 331 F. App'x 417, 420 (7th Cir. 2009) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)). Limitations on her access to phones, microwave, or television do not implicate deprivation of life's necessities or alone constitute a constitutional violation.

Further, Ms. Bowyer's placement in temporary lockdown due to the facility's measures to prevent the spread of COVID-19 does not violate due process rights. "Classifications of inmates implicate neither liberty nor property interests . . . ." *Lucien v. Fano*, 427 U.S. 215 (1976)). Additionally, "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). To the extent that she alleges that male prisoners are classified differently based on security status, she fails to allege

sufficient facts to plausibly infer that the defendants intentionally discriminated against her because she is female by setting up this response to the COVID-19 pandemic. *See McCauley v. City of Chi.,* 671 F.3d 611 (7th Cir. 2011) (discussing elements of equal protection claims).

Because the Court has been unable to identify a viable claim, the complaint is subject to dismissal.

## IV. Opportunity to Show Cause or Amend

The dismissal of Ms. Bowyer's complaint will not lead to the dismissal of the action at present. Instead, Ms. Bowyer shall have **through March 10, 2021**, to **show cause** why the action should not be dismissed for failure to state a claim upon which relief can be granted or file an amended complaint that cures the deficiencies identified above. *See Tate v. SCR Med. Trans.*, 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a pro se litigant, an opportunity to amend his complaint.").

An amended complaint will completely replace the original complaint. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it must set out every defendant, claim, and factual allegation Ms. Bowyer wishes to pursue in this action and identify which defendants are responsible for each alleged constitutional violation. It must also have the proper case number, 1:20-cv-02718-TWP-MPB, and the words "Amended Complaint" on the first page. If Ms. Bowyer files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If she fails to do so, this action will be dismissed without further notice for failure to state a claim upon which relief can be granted.

**The clerk shall update the docket** to reflect that although Ms. Bowyer is confined at the Indiana Women's Prison, offender mail is to be sent to 727 Moon Road, Plainfield, IN 46168.

**IT IS SO ORDERED.**

Date: 2/11/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

EMILEE BOWYER
262506
–INDIANA WOMEN'S PRISON
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168