UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMILEE BOWYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02718-TWP-MPB |
| | ) |
| LAURIE JOHNSON, | ) |
| KELLY NEECE, | ) |
| ISAAC RANDOLPH, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING AND DISMISSING AMENDED COMPLAINT
AND DIRECTING FINAL JUDGMENT**

This matter is before the Court for screening of the Amended Complaint. After Plaintiff Emilee Bowyer's ("Ms. Bowers") original complaint was dismissed, she filed an Amended Complaint in this action. *See* dkts. 18 and 24. Because Ms. Bowyer is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen her amended complaint.

**I. Screening Standard**

When screening an amended complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the amended complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

1

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. Amended Complaint

Ms. Bowyer's names the following in her Amended Complaint: Indiana Governor Eric Holcomb; Indiana Department of Correction ("IDOC") Commissioner, Robert Carter; Wexford of Indiana, LLC ("Wexford"); and Indiana Women's Prison ("IWP") Warden Laurie Johnson and Major Kelly Neece. Dkt. 24 at 1.

The crux of Ms. Bowyer's allegations relates to the COVID-19 response and preparedness plan that was implemented in IDOC facilities, at the IWP and Madison Correctional Facility ("Madison"). Ms. Bowyer has been housed in both facilities at certain times during the course of the pandemic response. She alleges that the defendants violated her Eighth Amendment rights because their "COVID-19 response policy and actions only placed burdens" upon her, "forcing her to suffer unconstitutional conditions of confinement" including exposure to COVID-19 and related illness. *Id.* at 2.

Ms. Bowyer maintains that the named defendants are responsible for actions under the COVID-19 response plan. *Id.* at 3. For example, she alleges Governor Holcomb has executive authority over the IDOC and is responsible for the plan. *Id.* Commissioner Carter likewise is responsible for the plan being adhered to at each facility. *Id.* at 2. Warden Johnson is responsible because he ensures application of the plan at IWP. *Id.* Major Neece ensures the plan is adhered to by custody staff at IWP. *Id.* And, finally, Wexford as the health provider is "responsible for COVID-19 related policies and responses." *Id.*

Ms. Bowyer is currently incarcerated at Madison, but she has not named any individual defendants who are directly employed there.

In March 2020, IWP implemented a no-work policy for incarcerated people who were not deemed essential, many services and programs were prohibited, and the facility was put on lockdown. *Id.* Kitchen workers that lived on Ms. Bowyer's unit began testing positive for COVID-19 and were quarantined on her unit. *Id.* Ms. Bowyer noticed symptoms of difficulty breathing and a loss of taste and smell but was refused a COVID test. *Id.* at 4. "Due to the deliberate indifference of administration's decision to quarantine these offenders" on her unit, Ms. Bowyer was exposed to and contracted COVID-19. *Id.* [1] Ms. Bowyer has become a chronic care patient for asthma and relies on an inhaler and has lasting medical issues from COVID-19. *Id.*

In May 2020, Ms. Bowyer was made to work in the commissary and to hand deliver items to COVID positive offenders on their units. *Id.* Though mandated to work, after her shifts, Ms. Bowyer was subjected to lockdown where she was denied daily showers, as needed access to water and toilets, and daily exercise. *Id.* IWP implemented limited access to the dayroom, and due to her work schedule, Ms. Bowyer was not able to use it much. *Id.* at 5. The lockdown did not allow Ms. Bowyer to have a private space for her mental health consultations, rather, these occurred in more public areas like the dayroom or in front of her cell. *Id.* Ms. Bowyer was denied rehabilitative recovery, group therapy, and other programming like culinary arts, and her Recovery While Incarcerated ("RWI") program was on hold for over one year. *Id.* She alleges the lack of programming has burdened her ability to earn credit time. *Id.*

The sack lunches provided to Ms. Bowyer during the lockdown periods were nutritionally deficient. *Id.* Due to Wexford and IDOC policies, her prescription for Dulcolax and fiber tablets

---

[1] The Court notes the inconsistencies in this statement that Ms. Bowyer indicates that she was never tested for the virus, rather that she requested a test, and was refused one.

3

was discontinued. *Id.* at 6. Thus, the need for nutritionally balanced meals was imperative to control her stomach condition. *Id.* Ms. Bowyer was quarantined three separate times between 2020 and 2021, for approximately 30 to 90 days at a time. *Id.* at 5.

In March 2021, Ms. Bowyer was transferred to Madison and assigned to locations where other inmates had been exposed to COVID-19, and was again limited to recreation, access to fresh air, library services, and religious services. *Id.* at 6. She states she has been denied "appropriate preventative measures to keep her from COVID-19 exposure[.]" *Id.*

At the end of her Complaint, Ms. Bowyer lists various dates of incidents that occurred from March 2020 through October 2020 in which she was denied recreation twice, access to showers twice, use of the bathroom or access to running water and toilets on three occasions where she urinated or bled on herself, access to laundry once, and access to all out of cell activity twice. *Id.* at 7. Ms. Bowyer alleges the IDOC does not respond to grievances, and she has been unsuccessful at obtaining relief when filing them. *Id.* She seeks injunctive, declaratory, and monetary relief. *Id.*

### III. Discussion

Ms. Bowyer alleges that the defendants have violated her Eighth Amendment rights by subjecting her to cruel and unusual punishment and failing to provide humane conditions of confinement. To state a claim under the Eighth Amendment, Ms. Bowyer must allege facts sufficient to support a claim that the "conditions of [her] confinement resulted in the denial of the minimal civilized measures of life's necessities, and that the defendants were deliberately indifferent to the conditions in which [she] was held." *Gruenber v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012) (internal quotations omitted). Ms. Bowyer's amended complaint is problematic for the following several reasons.

### 1. Individual Liability of Defendants

First, Ms. Bowyer has not alleged that any of the named defendants participated by being personally involved in any of the issues she raises. For example, she has not alleged that any of the defendants personally denied her medical treatment, testing, or preventative equipment such as masks, or required her to work with or be directly in close contact with sick inmates. She has not alleged that any defendant personally limited her access to recreation, showers, religious services, programming, certain meals, access to the restroom, and so on. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

### 2. COVID-19 Plan and Preparedness Claims and Plaintiff's Illness

Second, Ms. Bowyer presents an overarching legal theory that the named defendants were responsible for the COVID-19 response and preparedness plan, and she suffered illness because she was exposed to and contracted COVID-19. It is unclear whether Ms. Bowyer contends that any particular the defendant failed to implement the plan, or that the implementation of the plan itself gave rise to her claims. In any event, failure to follow any established protocol or guideline, by itself, is not enough to implicate a constitutional violation. *See, e.g., Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of . . . departmental regulation . . . practices[.]") (internal quotation omitted); *Waubanascum v. Shawano Cnty.*, 416 F.3d 658, 670 (7th Cir. 2005) (neither negligence

nor a violation of state law provide a basis for liability under § 1983); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("State law violations do not form the basis for imposing § 1983 liability.").

There is no factual basis upon which to conclude that any defendant's failure to follow COVID-19 protocols or guidelines violated Ms. Bowyer's Eighth Amendment rights. Moreover, none of the named defendants are alleged to be personally responsible for any circumstances Ms. Bowyer may have suffered including her exposure to and illness from COVID-19. Ms. Bowyer does allege that the IWP Warden was "directly responsible for ensuring the application" of the plan. Dkt. 24 at 2. But, even liberally construing Ms. Bowyer's amended complaint, there is no allegation that the Warden was personally responsible for staff's failure to follow the plan. There is no allegation that the Warden acted as a policymaker and was deliberately indifferent to a known risk that the policy would lead to constitutional violations. *See Johnson v. Dykstra*, No. 3-17-cv-00071-PPS-MGG, 2019 WL 2270356, at *3 (N.D. Ind. May 24, 2019) ("A party may not assert a *Monell* claim against prison officers in their individual capacities. Recall that under section 1983, only municipalities may be held liable for constitutional violations caused by their official policy including unwritten custom.").

Accordingly, any claim based on the theory that the defendants were responsible for the COVID-19 response and preparedness plan is dismissed for failure to state a claim upon which relief may be granted.

### 3. Conditions Unrelated to Plaintiff's COVID-19 Illness

Finally, as the Court addressed in its initial screening order, many of Ms. Bowyer's allegations relate to conditions that were a result of quarantine or facility lockdown, and none of these allegations are sufficient to state viable claims. Her amended complaint does not cure those

deficiencies. To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) she was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

The objective showing requires "that the conditions are sufficiently serious—i.e., that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, . . . 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted). The allegations do not assert conditions that are sufficiently serious. For example, Ms. Bowyer has not alleged that she was denied a shower or recreation for prolonged periods of time. She does not plead factual allegations to show how and to what extent she was deprived of religious or law library services. Ms. Bowyer has not explained what made her sack lunches nutritionally deficient or how any particular medical condition required her to be served a special meal tray.

Indeed, "[t]here is no constitutional right to running water in a prison cell," and the Constitution is not violated where an inmate has access to water in other areas of the facility. *Downs v. Carter*, 2016 WL 1660491, at *8 (N.D. Ill. Apr. 27, 2016). "Adequate toilet facilities

7

'are among the minimal civilized measures of life's necessities that must be afforded prisoners, but "[a] short-term breakdown . . . where the inmate otherwise has access to drinking water and alternative bathroom facilities, does not violate the Constitution." *Clay v. Johnson*, 2020 WL 1304628, at *3 (N.D. Ill. Mar. 19, 2020) (quoting *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017)).

An inmate does not have a liberty interest in admission to an educational program, even if the program allows for potential sentence credit. *See Zimmerman v. Tribble*, 226 F.3d 568, 571-72 (7th Cir. 2000) (finding no due process protection because "the successful completion of a program is not inevitable" and thus "denying [an inmate] the opportunity to earn good credit time does not 'inevitably affect the duration of the sentence,' and does not deprive him of constitutional guarantees") (quoting *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996)). Defendants are not required to provide due process to inmates they remove from or deny admission to a program. *See also Wallace v. Robinson*, 940 F.2d 243, 248 (7th Cir. 1991) (en banc) (prisoner has no constitutional right to particular job assignment); *Goodwin v. Lockett*, 2011 WL 13210260 (S.D. Ind. 2011) ("that a particular prisoner is ineligible to participate in certain programs does not implicate a protected liberty interest, even though participation in those programs would have provided him with an opportunity to earn good time credits at a higher rate.") (citing *Higgason*, 83 F.3d at 809-10).

Regarding any grievances Ms. Bowyer may have filed, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). To the extent that Ms. Bowyer contends any grievances were mishandled by the defendants, an "alleged mishandling of [ ] grievances by persons who otherwise did not cause or participate in the

8

underlying conduct states no claim." *Id.* It is well-settled that denying an inmate's grievance or refusing to investigate an incident after the fact does not, by itself, amount to a constitutional violation. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (dismissing the "contention that any public employee who knows (or should know) about a wrong must do something to fix it"); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

The Court acknowledges that the Coronavirus pandemic imposed certain challenges within the IDOC facilities where Ms. Bowyer was housed, that made for unprecedented, uncomfortable and difficult human experiences. However, placement in temporary quarantine or lockdown does not violate Ms. Bowyer's rights. *See, e.g., Lucien v. Fano*, 427 U.S. 215 (1976) ("Classification of inmates implicate neither liberty nor property interests . . . ."). And Ms. Bowyer's allegations do not establish that the circumstances she experienced were extreme or spanned a duration that could implicate the Eighth Amendment. *See, e.g, Howard v. Wheaton*, 668 F. Supp. 1140 (N.D. Ill. Aug. 12, 1987) (motion to dismiss denied where plaintiff alleged, he was exposed to unsanitary and unhealthy conditions when forced to urinate and defecate in broken toilets for 13 days); *Sanford v. Brookshire*, 879 F. Supp. 691 (W.D. Tx. June 24, 1994) (court found after bench trial that the plaintiff's Eighth Amendment rights were violated when he was forced to use shower floor as receptacle for his bodily waste, cleaning supplies were not provided, and he was forced to eat and sleep around the stifling odor for 6 days).

Further, an overarching problem with the plaintiff's complaint is that she does not allege that she has suffered any compensable injury as a result of the restrictions implemented by the facility in response to the pandemic. Section 1983 allows for recovery only by a "party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

42 U.S.C. § 1983; *see also Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . cause any injury.") (internal quotation omitted).

For the aforementioned reasons, Ms. Bowyer's Amended Complaint fails to state any claim upon which relief may be granted.

### IV. Dismissal of Amended Complaint

For a complaint to survive dismissal, it must include "plausible" allegations. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Amended Complaint, like Ms. Bowyer's original complaint, **fails to state a claim upon which relief may be granted**.

The Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (*quoting Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015)). However, the Court need not grant leave to amend if "'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Id.* at 347 (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "An amendment is futile if the amended complaint would not survive a motion for summary judgment." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007).

Ms. Bowyer was given an opportunity to file an amended complaint, and her most recent pleading also fails to plead sufficient claims against defendants. Based on its analysis of the claims raised in her amended complaint, above, and the discussion in the Court's first screening order at docket 18, the Court finds that further opportunities to amend would be futile.

Accordingly, this action is **dismissed with prejudice**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 7/21/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

EMILEE BOWYER
262506
MADISON CORRECTIONAL FACILITY
800 Bus Stop Dr.
Madison, IN 47250